IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

CERTAIN UNDERWRITERS AT       §
LLOYD'S, LONDON,              §
                             §
          Plaintiff,          §
                             §
v.                           §          CIVIL NO. H-04-4024
                             §
AMWEST FINANCIAL, INC.,      §
                             §
          Defendant.          §

## MEMORANDUM OPINION

Pending before the court[1] is Plaintiff's Motion for Summary Judgment on "Professional Services" Exclusion, Docket Entry No. 16, and Motion for Partial Summary Judgment on Intentional Conduct, the Expected-Harm Exclusion, and Lack of an "Occurrence," Docket Entry No. 14.  To date, Defendant has not filed a response to either of Plaintiff's two motions.

The court has considered the motions, relevant filings, and the applicable law.  For the reasons set forth below, Plaintiff's Motion for Summary Judgment on "Professional Services" Exclusion is **GRANTED** and Plaintiff's Motion for Partial Summary Judgment on Intentional Conduct, The Expected-Harm Exclusion, and Lack of an "Occurrence" is **DENIED AS MOOT**.

## I.  Case Background

### A.  Procedural Posture

---

[1]      The parties consented to proceed before the undersigned magistrate judge for all proceedings, including trial and final judgment, pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.  Docket Entry No. 12.

1

Defendant AmWest Financial, Inc. ("Defendant") sought coverage under an insurance policy underwritten by Plaintiff Certain Underwriters at Lloyd's, London, ("Plaintiff") for defense and indemnification in connection with an underlying state court lawsuit to which Defendant remains one of several named defendants.[2]  Plaintiff denied coverage on the grounds that there were no covered claims or, in the alternative, that the exclusions in the policy apply.[3]

Plaintiff filed the instant suit seeking a declaratory judgment that Plaintiff owes no duty of defense or indemnification under the insurance policy issued to Defendant.  By agreement of the parties, the dispute is limited to interpretation of the insurance policy at issue and whether said policy provides coverage for the acts or omissions alleged in the underlying state court lawsuit.[4]  Plaintiff filed a motion for summary judgment and a motion for partial summary judgment, both currently pending before this court.  To date, Defendant has not responded to either motion.[5]

---

[2]    Complaint, Docket Entry No. 1, ¶ 6.

[3]    Motion for Summary Judgment on "Professional Services" Exclusion, Docket Entry No. 16, Ex. 7, letter from Meyer Orlando LLC to Defendant date Sept. 20, 2004.

[4]    Joint Discovery/Case Management Plan, Docket Entry No. 5, p. 4.

[5]    On May 13, 2005, one day after a response was required by Local Rule ("L.R.") 7.3, attorney for Defendant filed a motion to withdraw.  Docket Entry No. 17.  The order was granted on May 23, 2005.  Docket Entry No. 19.  As of this date, according to court records, Defendant remains unrepresented by counsel.

**B.    The Insurance Policy**

A standard commercial general liability ("CGL") insurance policy ("the policy") was issued by Plaintiff to Defendant.[6]  The policy was effective from February 7, 2001, to February 7, 2002.[7] The policy generally covered bodily injury, property damage, advertising injury, and personal injury, subject to several endorsements.[8]

The relevant endorsement to the policy, designated "Exclusion - Designated Professional Services" ("Endorsement"), amended the policy to exclude from coverage certain injuries caused by the rendering of or failure to render any professional service."[9] Specifically, the Endorsement stated:

> With respect to any professional services shown in the Schedule, the following exclusion is added to Paragraph 2., Exclusions of Section I - Coverage A - Bodily Injury And Property Damage Liability and Paragraph 2., Exclusions of Section I - Coverage B - Personal And Advertising Injury Liability:
> This insurance does not apply to "bodily injury", "property damage", or "personal and advertising injury" due to the rendering of or failure to render any professional service.[10]

Listed on a schedule in the Endorsement was only one professional

---

[6]     Policy number LGAMP 010145.  Motion for Summary Judgment on "Professional Services" Exclusion, Docket Entry No. 16, Ex. 1, form SLC-3 USA. Attached to both motions pending before this court are identical copies of the relevant pleadings in the underlying suit and other exhibits.

[7]     Id.

[8]     See id.

[9]     Id. at form CG 21 16 07 98.

[10]     Id.

service, that of "financial lender."[11]   The phrase "financial
lender" was not defined in the Endorsement.[12]

## C.   Factual Background and Underlying State Court Lawsuit

In the underlying state court suit ("Emerson lawsuit"),[13] the
plaintiffs ("Emerson plaintiffs") claim that the defendants
("Emerson defendants") engaged in a scheme centered around selling
manufactured homes and land in Montgomery County at highly inflated
prices.   In their pleadings, the Emerson plaintiffs alleged that,
as generally unsophisticated buyers, they were fraudulently induced
by the Emerson defendants to purchase and finance the manufactured
homes and land at artificially inflated prices.[14]

Having sold the manufactured homes at far above market value,
the Emerson defendants are then alleged to have passed the risk of
lending to such marginal borrowers to distant national mortgage
lenders.[15]  The Emerson plaintiffs alleged that the two main Emerson
defendants and the various defendant companies, partnerships, and
entities they controlled solicited and received cooperation from

---

[11]     Id.

[12]     Id.

[13]     See Complaint, Docket Entry No. 1, ¶ 6.  The case is styled Emerson
Home Buyers Ass'n, et al. v.  Emerson Manufactured Homes, Ltd., et al., No. 03-
01-00267-CV, in the 410th District Court in Montgomery County, Texas.  Id.

[14]     Motion for Summary Judgment on "Professional Services" Exclusion,
Docket Entry No. 16, Ex. 3, Twelfth Amended Original Petition, ¶¶ 40-55.  Exhibit
3 is a copy of the live pleading; it consists of the petition and the Third
Amendment to the Twelfth Amended Original Petition Expedited Cases.

[15]     Id. at Third Amendment to the Twelfth Amended Original Petition
Expedited Cases, ¶¶ 5-57.

various defendant mortgage brokers (including Defendant), appraisers, insurance agents, and title insurance companies to misrepresent to both the buyers and the national mortgage lenders the true value of the properties pledged as collateral on the mortgage loans.[16]

The Emerson plaintiffs alleged numerous causes of action, centered around the Texas Deceptive Trade Practices Act, fraud, conspiracy, and unjust enrichment.[17]  Allegedly, damages totalled in the millions of dollars.[18]  Defendant AmWest was added as a defendant in the Emerson suit as one of the intermediary parties in the tenth amended petition of the Emerson suit.[19]  At that time, Defendant made a claim under the insurance policy for defense and indemnification in connection with the Emerson lawsuit.[20]  When other defendants in the Emerson lawsuit added actions against Defendant, Defendant also tendered those actions to Plaintiff for defense.[21]  In a position letter dated September 20, 2004, Plaintiff

---

[16]     Complaint, Docket Entry No. 1, ¶ 6.

[17]     Motion for Summary Judgment on "Professional Services" Exclusion, Docket Entry No. 16, Ex. 3, Twelfth Amended Original Petition, Third Amendment to the Twelfth Amended Original Petition Expedited Cases.

[18]     Motion for Summary Judgment on "Professional Services" Exclusion, Docket Entry No. 16, ¶ 8.

[19]     Id. at Ex. 2, ¶ 22.

[20]     Id. at Ex. 7, letter from Meyer Orlando LLC to Defendant dated Sept. 20, 2004.

[21]     See id. at Ex. 8, letter from Meyer Orlando LLC to Defendant dated Feb. 2, 2005.

denied coverage of Defendant's original claims.[22]  Subsequently, in
another position letter dated February 2, 2005 Plaintiff denied
coverage for the additional claims tendered by Defendant.[23]

## II.  Legal Standard

### A.  Summary Judgment Standard

Summary judgment is warranted when the evidence reveals that
no genuine dispute exists regarding any material fact and the
moving party is entitled to judgment as a matter of law.  Fed. R.
Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986);
Brown v. City of Houston, Tex., 337 F.3d 539, 540-41 (5th Cir.
2003).  The movant must inform the court of the basis for the
summary judgment motion and must point to relevant excerpts from
pleadings, depositions, answers to interrogatories, admissions, or
affidavits which demonstrate the absence of genuine factual issues.
Celotex Corp., 477 U.S. at 323; Topalian v. Ehrman, 954 F.2d 1125,
1131 (5th Cir. 1992).

A material fact is a fact which is identified by applicable
substantive law as critical to the outcome of the suit.  Anderson
v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  To be genuine,
the dispute regarding a material fact must be supported by evidence
such that a reasonable jury could resolve the issue in favor of

---

[22]    Id. at Ex. 7, letter from Meyer Orlando LLC to Defendant dated Sept.
20, 2004.

[23]    Id. at Ex. 8, letter from Meyer Orlando LLC to Defendant dated Feb.
2, 2005.

either party.  Id. at 250.  When considering the evidence, "[d]oubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party." Evans v. City of Houston, 246 F.3d 344, 348 (5th Cir. 2001).

The nonmovant must show more than "some metaphysical doubt as to the material facts."  Meinecke v. H & R Block of Houston, 66 F.3d 77, 81 (5th Cir. 1995) (citing Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)).  Conclusory allegations, unsubstantiated assertions, improbable inferences, unsupported speculation, or only a scintilla of evidence will not carry this burden.  Brown, 337 F.3d at 541; Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994).

**B.   Standard for Unopposed Motions for Summary Judgment**

The Local Rules for the Southern District of Texas state that failure to respond to a motion will be taken as a representation of no opposition.  L.R. 7.4.  Generally, the non-moving party has twenty days to file a response before the lack of response is considered a lack of opposition.  L.R. 7.3.  However, because it would be improper to grant a motion for summary judgment merely because of lack of response, this court must carefully consider the merits of Plaintiff's motions for summary judgment. Hibernia Nat'l Bank v. Administracion Cent. S.A., 776 F.2d 1277, 1279 (5th Cir. 1985); John v. Louisiana Bd. of Trs. for State Colls. & Univs., 757 F.2d 698, 707-08 (5th Cir. 1985).

7

Notwithstanding the local rules, a party moving for summary judgment still has the burden of proving that no issue of material fact exists.  <u>Celotex</u>, 477 U.S. at 323.  If the movant fails to meet his burden the motion must be denied, regardless of the response, or lack thereof, by the nonmovant.  <u>Tubacex, Inc. v. M/V Risan</u>, 45 F.3d 951, 954 (5th Cir. 1995); <u>Little</u>, 37 F.3d at 1075. However, the court will only resolve factual controversies in favor of the nonmoving party when a controversy actually exists; in other words, no controversy exists when factual allegations are not challenged by the nonmoving party.  <u>Little</u>, 37 F.3d at 1075 (relying on <u>Lujan v. National Wildlife Federation</u>, 497 U.S. 871, 888 (1990)).  Therefore, assumptions or inferences that the nonmoving party could or would prove the necessary facts will not be made.  <u>Id.</u>

### III.  Applicable Law

**A.  Jurisdiction and Choice of Law**

Plaintiff is a citizen of a foreign country, the United Kingdom, and Defendant is a Texas corporation with its principal place of business in Texas.[24]  Neither party disputes the jurisdiction of this court.[25]  As this case is in federal court under diversity jurisdiction, state law governs substantive matters.  <u>Erie R.R. v. Tompkins</u>, 304 U.S. 64 (1938).  Because Texas

---

[24]    Complaint, Docket Entry No. 1, ¶¶ 1-2.

[25]    Joint Discovery/Case Management Plan, Docket Entry No. 5, ¶ 4.

8

is the forum state in this matter, the court applies Texas' choice of law rules.  Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941) (a federal district court sitting in diversity must apply the forum state's conflict of laws rules).  Any insurance policy payable to a "citizen or inhabitant" of Texas by an insurance company doing business in Texas is held to be governed by Texas law regardless of where the contract was executed or to where the premiums are paid.  Tex. Ins. Code art. 21.42.  Accordingly, Texas law applies to the merits of this case.

**B.    Burdens of Proof and Contract Interpretation**

In an insurance contract dispute, the initial burden falls on the insured to demonstrate that coverage exists under an applicable insurance policy.  Evergreen Nat'l Indem. Co. v. Tan It All, Inc., 111 S.W.3d 669, 675 (Tex. App.—Austin 2003, no pet.).  However, the insurer bears the burden of establishing the applicability of an exclusion permitting it to deny coverage.  Am. States Ins. Co. v. Bailey, 133 F.3d 363, 369 (5th Cir. 1998) (applying Texas law and placing burden on insurer to demonstrate that the only reasonable interpretation supports exclusion); see also Tex. Ins. Code Ann. § 554.002 (stating that insurer has burden of proof to any avoidance or affirmative defense).

The construction of an insurance policy, like other written contracts, is a question of law to be determined by the court. State Farm Life Ins. Co. v. Beaston, 907 S.W.2d 430, 433 (Tex.

1995); Coker v. Coker, 650 S.W.2d 391, 393-94 (Tex. 1983).  Under Texas law, insurance policies are subject to the general principles of contract interpretation and construction.  Guaranty Nat'l, 211 F.3d at 243 (applying Texas law); Forbau v. Aetna Life Ins. Co., 876 S.W.2d 132, 133 (Tex. 1994).  All parts of the policy must be read together in order to give effect to the written expression of the parties' intent as a whole and the court must "exercise caution not to isolate particular sections or provisions from the contract as a whole."  Provident Life & Accident Ins. Co. v. Knott, 128 S.W.3d 211, 216-17 (Tex. 2004).  Terms defined in the policy, if any, control the interpretation of the policy in order to give meaning to the entire policy.  Id. at 219.

When a policy as worded can be given "a certain or definite legal meaning or interpretation," it is unambiguous as a matter of law and the court enforces it as written.  Coker, 650 S.W.2d at 393.  However, if the policy is susceptible to more than one reasonable interpretation, the court must resolve the ambiguity in favor of the insured.  Progressive County Mut. Ins. Co. v. Sink, 107 S.W.3d 547, 551 (Tex. 2003).  When determining whether an ambiguity exists, the entire policy must be read as a whole and the insurance policy should not be construed to change or enlarge the coverage.  Royal Indem. Co. v. Marshall, 388 S.W.2d (Tex. 1965).  Whether an ambiguity exists in the language of an insurance contract is a question of law for the court to determine.  Kelley-Coppedge, Inc. v. Highlands Ins. Co., 980 S.W.2d 462, 464 (Tex.

10

1998).

## C.    Duty to Defend

In Texas, an insurer's duty to defend and duty to indemnify are two distinct and separate duties. Trinity Universal Ins. Co. v. Cowan, 945 S.W.2d 819, 821-22 (Tex. 1997). Under the "eight-corners" or "complaint allegation" rule, an insurer's duty to defend its insured only arises if the insured is sued and the complaint alleges facts that potentially support claims for which there is coverage. Nat'l Union Fire Ins. Co. v. Merchs. Fast Motor Lines, Inc., 939 S.W.2d 139, 141 (Tex. 1997). In determining whether this duty exists, the court's only job is to compare the four corners of the pleading with the four corners of the insurance policy. Id. If the pleading alone does not allege facts within the scope of coverage, the insurer is not legally required to defend the insured. Am. Physicians Ins. Exch. v. Garcia, 876 S.W.2d 842, 847-48 (Tex. 1994). The focus of the court's inquiry is on the factual allegations that show the origin of damages, not on the asserted legal theories. St. Paul Fire & Marine Ins. Co. v. Green Tree Fin. Corp.-Tex., 249 F.3d 389, 392 (5th Cir. 2001) (applying Texas law); Nat'l Union Fire Ins. Co., 939 S.W.2d at 141.

When applying the eight-corners rule, the court considers the factual allegations in light of the insurance policy without regard to their truth or falsity. See Argonaut Southwest Ins. Co. v. Maupin, 500 S.W.2d 633, 635 (Tex. 1973). The court interprets the

allegations liberally and resolves all doubts regarding the duty to defend in favor of the insured.  Nat'l Union, 939 S.W.2d at 141. However, the court may not read facts into the pleadings, look outside the pleadings, or imagine factual scenarios that might trigger coverage.  Id. at 142.

**D.   Duty to Indemnify**

The duty to indemnify arises only if the duty to defend first exists.  Am. States Ins. Co. v. Bailey, 133 F.3d 363, 368 (5th Cir. 1998) (noting that "[l]ogic and common sense dictate that if there is no duty to defend, then there must be no duty to indemnify"). Under Texas law, an insurer's duty to indemnify is narrower than its duty to defend.  St. Paul Ins. Co. v. Tex. Dep't of Transp., 999 S.W.2d 881, 884 (Tex. App.—Austin 1999, pet. denied).  The duty is triggered only by the actual facts establishing the insured's liability in the underlying litigation.  Trinity Universal Ins. Co., 945 S.W.2d at 821.  In other words, no duty to indemnify arises unless the underlying suit establishes liability for damages covered by the insuring agreement of the policy.  See Employers Cas. Co. v. Block, 744 S.W.2d 940, 944 (Tex. 1988), disapproved on other grounds by State Farm Fire & Cas. Co. v. Gandy, 925 S.W.2d 696, 714 (Tex. 1996); see also Heyden Newport Chem., 387 S.W.2d at 25 (noting that the insurer's duty to indemnify arises because the insured "has been adjudicated to be legally responsible").

**IV.  Analysis**

**A.    Plaintiff's Motion on the "Professional Services" Exclusion**

Plaintiff's first motion asks for a declaration that: (1) Plaintiff no owes duty to defend Defendant for the Emerson lawsuit or any counter- or cross-claims or interventions based on the same factual allegations; (2) Plaintiff has no duty to indemnify Defendant for same; and (3) Plaintiff is entitled to recover reasonable attorney's fees.   Plaintiff's motion rests on two related grounds.   The first is that, for the purposes of the insurance policy in question, Defendant was considered a "financial lender."   The second is that, because all of the acts that Defendant was alleged to have committed in the Emerson pleadings were "professional services" as a "financial lender," the insurance policy's professional services exclusion applies.   Plaintiff argues that, because the acts pled against Defendant fall within the scope of the exclusion, Plaintiff owes Defendant no duty of defense or indemnification.   For the reasons set out below, the court agrees with Plaintiff on the first two issues regarding the duties to defend and indemnify and disagrees on the issue of attorney's fees.

**1.    Was Defendant a "Financial Lender"?**

Plaintiff's first ground is that Defendant is a "financial lender" for the purposes of the insurance policy, primarily because Defendant's business description was that of "financial lender," and, thus, when the parties entered into their agreement they intended for the exclusion to apply to all of Defendant's business

activities for monetary gain.

Examining the insurance policy, the court agrees that the policy unambiguously indicates that the parties intended that, for the purposes of the policy, Defendant's business was that of a "financial lender." In support of this conclusion, the court notes that Defendant's business activity was consistently characterized in the policy as that of a "financial lender." In the "Property Contract Information Sheet," Defendant was described as a "financial lender."[26] On the declarations sheet Defendant's business was again listed as "financial lender."[27] The policy did not otherwise define "financial lender." If the parties had intended that the term "financial lender" be more narrowly defined or construed, they did not do so; instead, the term is used only in the most general sense to describe Defendant's primary business.

Furthermore, this definition is supported Texas law. The Finance Code defines a mortgage broker as "a person who receives an application from a prospective borrower for the purposes of making a mortgage loan from that person's own funds or from the funds of another person." Tex. Fin. Code Ann. § 156.002(9). Additionally, mortgage brokers are permitted to "[sell], transfer, assign[], or release [their] rights on the closing of a mortgage sale." Tex. Fin. Code Ann. § 156.003. In the Insurance Code, a lender is

---

[26]     Motion for Summary Judgment on "Professional Services" Exclusion, Docket Entry No. 16, Ex. 1, Property Contract Information Sheet.

[27]     Id. at form CL 150 (6-93).

14

defined as "an individual, . . ., or other entity, agent, loan
agent, servicing agent, or loan or other mortgage broker who lends
money and receives or otherwise acquires a mortgage, a lien, a deed
of trust, or any other security interest in or on any real or
personal property as security for the loan." Tex. Ins. Code Ann. §
549.001(3) (emphasis added).  Both sections of the Texas Code
clearly contemplate mortgage brokers as being more than an
ancillary part of the lending process.

     In a recent Texas case, the mortgage company who arranged the
loan and completed all the necessary documentation but then
immediately sold the mortgage to another company was considered to
be a lender.  Hawthorne v. Countrywide Home Loans, Inc., 150 S.W.3d
574, 578 (Tex. App.—Dallas 2004, no pet.).  In Hawthorne, though
the original "lender" was a mortgage company and not a mortgage
broker per se, the mortgage company performed essentially the same
tasks as a mortgage broker.  Compare id. with Tex. Fin. Code Ann.
§ 156.002(9).  Furthermore, that court also held that the mortgage
company which ultimately bought and serviced the mortgage loan was
also a "lender."  Hawthorne, 150 S.W.3d at 578.  In other words,
the court in Hawthorne held that each party in the chain of those
directly involved in making a mortgage loan, from the person who
arranges or originates the loan and completes the necessary
documentation to the ultimate mortgagee is considered a lender.
See id.

     When taking into account the policy language as well as

15

current Texas law, the court finds that the term "financial lender"
encompassed Defendant's business operations done for financial
gain.

### 2.   Were Defendant's Alleged Actions "Professional Services"?

Plaintiff's second and related contention is that the acts
that Defendant was alleged to have committed in the Emerson lawsuit
were "professional services" as a "financial lender" and thus
excluded from coverage under the insurance policy.

What activities constitute a "professional service" in Texas
was analyzed in Atlantic Lloyd's Ins. Co. of Tex. v. Susman
Godfrey, L.L.P., 982 S.W.2d 472 (Tex. App.—Dallas 1998, pet.
denied).   In that case, the court held that an act must be more
than an ordinary task to be a "professional service."  Id. at 476.
The task "must arise out of acts particular to the individual's
specialized vocation."  Id. at 476-77.   Furthermore, an act is not
a professional service merely because it is performed by a
professional; instead, it must be necessary for the professional to
use his specialized knowledge or training.  Id. at 477.   Ordinary
or administrative acts can be "professional services" if they are
vital to the core business of the professional.  Allstate Ins. Co.
v. Disability Serv. of the Southwest Inc., 400 F.3d 260, 264-65
(5th Cir. 2005).[28]   An act does not become a "professional service"

---

[28]      In this case, the Fifth Circuit held that providing a communication
device (i.e., a phone) to a quadriplegic patient was a professional service
because it was "vital to providing 'health' or 'nursing' services" given the
facts and because the health care provider's contract with a state agency

merely because it is regulated by outside professional regulation, otherwise almost any regulated matter would be "subsumed into a matter inherent to that profession." Susman Godfrey, 982 S.W.2d at 477. The focus should be on the act itself and not the title or character of the party performing the act. Id. at 476.

With these criteria in mind, the court has little trouble concluding that Defendant's alleged acts in the Emerson suit were "professional services." The question before this court is "whether there is a potential cause of injury pleaded and not covered by the policy exclusions." Allstate Ins. Co., 400 F.3d at 263.

Defendants are alleged to have committed the following acts: gathering borrower credit information, taking loan applications, preparing good faith estimates, and soliciting services from appraisers, insurance agents, and title companies.[29] Importantly, Defendants were also alleged to have used their knowledge of the mortgage lending industry to "tailor" the loan applications so that they were suitable for the mortgage lenders.[30] The allegations against Defendant, including those in the main pleadings, an intervention, and two counter-claims, focused on Defendant's

---

required that patients be provided with a communication devices for emergencies. Allstate Ins. Co., 400 F.3d at 264-65.

[29]    Motion for Summary Judgment on "Professional Services" Exclusion, Docket Entry No. 16, Ex. 3, Third Amendment to the Twelfth Amended Original Petition Expedited Cases, ¶ 58.

[30]    Id. at ¶ 60.

deliberate acts in the capacity of mortgage broker in order to "create the impression of value" in furtherance of the scheme.[31]

Whatever their legal theories, all the pleadings in the Emerson lawsuit alleged as their factual basis that Defendant arranged mortgage loans in excess of the reasonable value of the collateral property, in some instances falsifying or misrepresenting information on the forms. Allegedly, Defendant unilaterally chose the type of mortgage, the selections of the mortgage lenders, insurance underwriters, appraisers and title companies in order to better "substantiate and further [the] illusion of collateral value and equity to both the buyer/borrower and mortgagee."[32] Specifically, the pleadings alleged that Defendant obtained or helped obtain casualty insurance that matched the inflated appraisal of the property and colluded with defendant title companies to ensure that the properties would escrow and that a title insurance policy in the required amount was issued.[33] The petition in intervention alleged that Defendant "concealed [] and actively misrepresented the true facts of each transaction."[34]

---

[31]    Motion for Summary Judgment on "Professional Services" Exclusion, Docket Entry No. 16, Ex. 3, Twelfth Amended Original Petition, ¶ 60.

[32]    Motion for Summary Judgment on "Professional Services" Exclusion, Docket Entry No. 16, Ex. 3, Third Amendment to the Twelfth Amended Original Petition Expedited Cases, ¶ 161.

[33]    Motion for Summary Judgment on "Professional Services" Exclusion, Docket Entry No. 16, Ex. 3, Twelfth Amended Original Petition, ¶¶ 24, 28.

[34]    Motion for Summary Judgment on "Professional Services" Exclusion, Docket Entry No. 16, Ex. 4, Petition in Intervention, ¶ 61.

Furthermore, Defendant was alleged to have either helped fabricate false or misleading information or turned a blind eye when it accepted unverified information from borrowers.[35]  The intervenor also alleged that Defendant breached its contract with the intervenor by preparing inaccurate and misleading loan applications.[36]  Similarly, the counter-claims by two defendant insurance companies alleged the same facts, though some of their legal theories differed.[37]

All these steps were necessary in order for the loan to close.[38]  These acts were all "professional services" performed by Defendant, since they were not merely those of a scribe filling out forms at the direction of someone else, but instead constituted the core functions of Defendant's business.

Even if, for the sake of argument, Defendant's acts were entirely proper and Defendants were not participants in the fraudulent scheme, the acts alleged were all in Defendant's capacity as mortgage broker, required the specialized skills and knowledge of a mortgage broker, and were not merely incidental or administrative in relation to Defendant's business.  In fact, the

---

[35]    Id. at ¶ 62.

[36]    Id. at ¶ 81.

[37]    Motion for Summary Judgment on "Professional Services" Exclusion, Docket Entry No. 16, Ex. 5, Foremost's First Supplemental Cross-Claim, ¶ 15, et seq.; Ex. 6, Defendant's Second Amended Answer, Counterclaim and Original Cross-Claims, pp. 7-9.

[38]    Motion for Summary Judgment on "Professional Services" Exclusion, Docket Entry No. 16, Ex. 3, Twelfth Amended Original Petition, ¶ 26.

specialized services and knowledge of Defendant and other mortgage broker defendants were at the heart of the alleged scheme.[39]

It is clear in light of the record before this court that Defendant's actions as alleged in the Emerson lawsuit were "professional services" as a "financial lender." The professional services exclusion to the policy applies to the facts as alleged in the underlying suit, and therefore the court finds that Plaintiff owes Defendant no duty to defend. Nat'l Union Fire Ins. Co., 939 S.W.2d at 141. Because the duty to indemnify is narrower than the duty to defend and cannot arise unless the duty to defend first exists, the court also finds that Plaintiff owes Defendant no duty to indemnify. Am. States Ins. Co., 133 F.3d at 368.

### 3.   Attorney's Fees

Plaintiff also seeks attorney's fees in addition to a declaratory judgment.[40] The Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, under which this suit is brought, allows for "necessary or proper relief" to be granted to the prevailing party. 28 U.S.C. §§ 2201, 2202. However, the Act does not provide the requisite statutory authority for relief that would not otherwise be available under state law in a diversity case. Mercantile Nat'l Bank at Dallas v. Bradford Trust Co., 850 F.2d 215, 218 (5th Cir.

---

[39]    Motion for Summary Judgment on "Professional Services" Exclusion, Docket Entry No. 16, Ex. 3, Third Amendment to the Twelfth Amended Original Petition Expedited Cases, ¶ 58.

[40]    Motion for Summary Judgment on "Professional Services" Exclusion, Docket Entry No. 16, p. 8.

1988).

While the Texas law permits parties to recover reasonable attorney's fees for actions based on a contract or insurance policy, the party seeking to recover attorney's fees has the burden of proving such fees are recoverable. Tex. Civ. Prac. & Rem. Code Ann. § 38.001; Stewart Title Guar. Co. v. Sterling, 822 S.W.2d 1, 10 (Tex. 1991). Here Plaintiff merely asks for attorney's fees and fails to cite any authority that would show that Plaintiff is entitled to such fees. Therefore, absent specific reference by Plaintiff to any state substantive law which justifies such an award or to any act of "bad faith, vexation, wantonness, oppression" on the part of Defendant, the court declines to make an exception to the American Rule requiring litigants to bear their own attorney's fees. See Mercantile Nat'l Bank at Dallas, 850 F.2d at 218.

**B.   Plaintiff's Motion on Intentional Conduct, Expected-Harm Exclusion, and Lack of an "Occurrence"**

Because the court concludes that Plaintiff is entitled to summary judgment based on the policy's professional services exclusion, the court denies Plaintiff's second motion as moot.

## IV.   Conclusion

Based on the foregoing, Plaintiff's Motion for Summary Judgment on "Professional Services" Exclusion is **GRANTED** and Plaintiff's Motion for Partial Summary Judgment on Intentional

21

Conduct, the Expected-Harm Exclusion, and Lack of an "Occurrence" is **DENIED AS MOOT.**   Plaintiff's request for attorney's fees is **DENIED.**

SIGNED in Houston, Texas, this 17th day of August, 2005.

Nancy K. Johnson
United States Magistrate Judge